UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CAPTAIN RORY M. WALSH, | 4:24-CV-04018-CCT |
| Plaintiff, | |
| vs. | **ORDER DISMISSING PLAINTIFF'S COMPLAINT AND DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE COMPLAINT** |
| SEC NAV CARLOS DEL TORO, MICHAEL W. HAGEE, JERRY D. HUMBLE, FBI MICHAEL D. NORDWALL, FBI SAIC ALVIN M. WINSTON SR., US ATTY ALISON RAMSDELL, DAVID J. GAMEZ, FBI INFORMANT, THE UNITED STATES OF AMERICA, and DEPARTMENT OF THE NAVY, | |
| Defendants. | |

Defendants the United States of America, Department of the Navy, Carlos Del Toro, Michael W. Hagee, Jerry D. Humble, Michael D. Nordwall, Alvin M. Winston, Sr., and Alison Ramsdell jointly move to dismiss Captain Rory M. Walsh's suit against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction; Rule 12(b)(2) for lack of personal jurisdiction; and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Docket 42. Defendant David J. Gamez separately moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6). Docket 50. Captain Walsh opposes both motions.

1

Dockets 53 and 57. Captain Walsh also filed a motion to supplement his

complaint, Docket 33, to which the Federal Defendants object, Docket 52.

**BACKGROUND**

On February 1, 2024, Captain Walsh, acting pro se, filed this suit

against what will collectively be referred to as "the Federal Defendants" and

against his neighbor Gamez. Docket 1. The Federal Defendants include: the

United States of America; the Department of the Navy; Del Toro (United States

Secretary of the Navy); Hagee (retired Marine Corps general); Humble (retired

Marine Corps major general); Nordwall (Assistant Director, Federal Bureau of

Investigation (FBI), Criminal Investigation Division); Winston (FBI agent in

Minneapolis field office); and Ramsdell (United States Attorney, District of

South Dakota).[1] *Id.*; Docket 43 at 2 (identifying the parties' respective titles).

According to Captain Walsh, his neighbor Gamez is an FBI informant. Docket 1

¶ 54.

Captain Walsh's complaint alleged ten separate counts, although all

counts in essence relate to Captain Walsh's belief that he has a right to recover

approximately $4,000,000 from the Federal Defendants and Gamez "jointly and

severally" because Humble tried to murder him in 1985; because Hagee has

repeatedly used FBI agents to try to murder him to cover up the 1985

attempted murder; because Hagee has repeatedly interfered with his Veteran's

---

[1] Captain Walsh sued Del Toro, Ramsdell, Nordwall, and Winston in their individual
and official capacities and Humble, Hagee, and Gamez in their individual capacities.
Docket 1 ¶ 4 (the paragraph numbers come from the typed portion of Captain Walsh's
complaint, beginning at page 6 of Docket 1).

Administration (VA) treatment and attempted to prevent him from proceeding on VA claims or claims in federal court; and because certain government officials have done nothing in response to these repeated criminal acts by the FBI, Hagee, and Humble. *See generally* Docket 1. Captain Walsh's complaint denoted that suit is brought under the Federal Tort Claims Act (FTCA), the United States Constitution, various criminal statutes, the Privacy Act, the Health Insurance Portability and Accountability Act (HIPAA), the Administrative Procedures Act (APA), the Crimes Victims' Rights Act (CVRA), and under 42 U.S.C. § 1983. Docket 1 ¶ 1. The complaint alleged this Court has jurisdiction to consider Captain Walsh's FTCA claims under 28 U.S.C. § 1346(b) and his remaining claims under 28 U.S.C. §§ 1331 and 1343. *Id.* ¶ 2.

According to Captain Walsh's first count in the complaint, the crimes and wrongs against him began in 1985, when Humble assaulted and attempted to murder him by pouring "inorganic arsenic into an open drink on [his] desk[.]" *Id.* ¶ 10. At that time, Captain Walsh and Humble were stationed together in the Marine Corps. *Id.* Captain Walsh claimed that after the attempted murder by Humble, he "immediately began to die" and was "ordered to [the] sick bay[.]" *Id.* (bold omitted). He asserted that "[t]he Navy did not know what had happened to [him], an ex-college athlete." *Id.* He further claimed that Humble's attempted murder left him with diabetes mellitus, "an incurable disease[,]" and that the VA has been treating him for his injury for many years. *Id.* ¶¶ 11–12; Docket 1-1.

3

Captain Walsh, seemingly acknowledging that Humble's alleged wrongful act occurred multiple decades ago, argued that the statute of limitations has not run because the cause of the injury was not discovered until January 2010 when "the VA confirmed Humble's premediated murder attempt[.]" *Id.* ¶ 13. He also alleged that he timely brought this claim related to Humble's conduct because there is no statute of limitations on attempted murder. *Id.* Finally, he argued a right to proceed on this claim under the "continuing violation doctrine" because Humble's attempt to murder him "began Hagee's epic crimes[,]" including interfering with his VA benefits and ordering others to murder him on August 3, 2017, September 3, 2022, October 8, 2022, and April 28, 2023. *Id.*

In counts two through seven, Captain Walsh recounted the facts surrounding the dates on which Hagee allegedly ordered him to be murdered and instances in which Hagee tried to interfere with his attempt to make certain filings in federal court or tried to impair his ability to receive VA benefits. *See generally id.* ¶¶ 14–39. More particularly, Captain Walsh alleged in one count that Hagee defrauded the VA on December 13, 2006, by filing a false medical evaluation, and on August 1 and October 21, 2023, by submitting a fraudulent VA Form 526EZ, which, according to Captain Walsh, were attempts by Hagee to interfere with his right to be treated by the VA for the injuries he sustained when Humble allegedly attempted to murder him in 1985. *Id.* ¶¶ 16–19. Captain Walsh asserted that Hagee's acts "are major

crimes" for which "Hagee faces life in prison and fines up to $10,000,000.00, for each count (3)." *Id.* ¶ 20.

Captain Walsh alleged in a separate count that one act of attempted murder occurred on October 11, 2006, when Hagee "sent federal agents to strike and kill [him] during [his] evening run" after "illegally looking into [his] home and seeing a court filing [he] was about to file[.]" *Id.* ¶¶ 14, 15. Captain Walsh claimed he "dodged their car and vaulted some hedges, ducking behind a street sign, and they missed." *Id.* ¶ 14. Captain Walsh, in a different count, asserted he evaded another attempt by Hagee to use agents to kill him when, on August 3, 2017, federal agents "narrowly miss[ed] [his] car on I-68 near Grantsville, MD[,]" while he was driving home from an interview in Pennsylvania with "NCIS Agents sent by Naval Intelligence" to investigate Hagee and Humble trying to murder him. *Id.* ¶¶ 21, 22.

The next three alleged acts of attempted murder occurred in South Dakota. Captain Walsh claimed that he was running on a trail in Sioux Falls on the evening of September 2, 2022, when "suddenly [he was] surrounded by federal agents with Pit Bull dogs attempting to main [sic] and/or kill [him]" and "[o]ther murderous agents came up on [his] left to squeeze [him] into the dogs." *Id.* ¶ 25 (footnote omitted). Captain Walsh "quickly sped up to get away from this team of murderous agents" and left "unscathed." *Id.* According to Captain Walsh, Hagee orchestrated this attempted murder "in direct, pointed retaliation" to an order by the Board of Veterans Appeals (BVA) allowing a motion by Captain Walsh to be heard. *Id.* ¶ 27. Hagee again "sent federal FBI

5

assassins to strike and kill" Captain Walsh during his evening run, this time on October 28, 2022, in Sioux Falls. *Id.* ¶ 31. Captain Walsh did not relate how he avoided death on this date. The final alleged instance of attempted murder occurred on April 28, 2023, when Hagee "sent another team of federal agents directly into [Captain Walsh's] residence to murder [him]." *Id.* ¶ 36. Captain Walsh claimed Hagee did so in retaliation to the VA waiving certain debts of his and releasing him "from having to repay a single penny, despite Hagee's determined criminal indifference." *Id.* (bold omitted). For the above acts by Hagee, Captain Walsh asserted a right to recover damages under the Privacy Act, the CVRA, and various criminal statutes. *See generally id.* ¶¶ 15, 27, 28, 29, 30, 33, 39, 47, and 55.

In another count, Captain Walsh asserted that "Hagee has been sending the criminal FBI into [his] residence without any warrant or reason" since being informed of Humble's act of attempted murder. *Id.* ¶ 48 (bold omitted). Captain Walsh did not identify specific dates on which his home was entered. He, however, claimed that these agents entered his home armed and "repeatedly stole[ ] invaluable heirlooms from [his] residence, and priceless memorabilia from [his] career in the Marines during six (6) deployments." *Id.* ¶¶ 48–49. Captain Walsh asserted that he notified the Navy of the theft and damage but did not receive a response by Nordwall or Winston. *Id.* ¶ 51. He asserted a right to recover damages from "Nordwall and Winston, and their criminal agents," citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.*

6

Captain Walsh similarly asserted that Del Toro and Ramsdell failed to act in response to his reports of the above criminal conduct. *See generally id.* ¶¶ 40–47. In particular, he claimed that he kept Del Toro and Ramsdell informed of Hagee's crimes, but they did "absolutely nothing" to police or control him. *Id.* ¶¶ 40, 42, 45 (bold omitted). According to Captain Walsh, such failure to act "has brought significant liability upon defendant [D]el Toro," *id.* ¶ 46, and that "Ramsdell must now be removed from office," *id.* ¶ 45 (bold omitted). Captain Walsh claimed a right to recover under 18 U.S.C. § 3771, the CVRA, and the Privacy Act, and against Del Toro under 18 U.S.C. § 2237, a criminal statute pertaining to matters related to vessels of the United States or vessels subject to the jurisdiction of the United States. *Id.* ¶ 47.

Captain Walsh named Gamez for the first time in count ten. *Id.* ¶ 54. He claimed that Gamez is an FBI informant, but he did not otherwise allege that Gamez engaged in any specific wrongful conduct. Rather, Captain Walsh asserted that the FBI, deployed by Winston, used Gamez's house when creating an incident on December 3, 2023, in an attempt to "lure [Captain Walsh] out of his residence" and arrest him. *Id.* According to Captain Walsh, this conduct violated his Fourteenth Amendment rights and the Ku Klux Klan Act of 1871. *Id.* Captain Walsh claimed a right to recover under 18 U.S.C. § 3771 and Privacy Act. *Id.* ¶ 55.

On April 13, 2024, Captain Walsh filed a motion to supplement his complaint "to relay the most recent crime by the criminal FBI out of the Minneapolis FBI Office . . . on 7 April 2024, using the same FBI undercover

agent who attempted to create an incident" in Sioux Falls on September 21, 2022. Docket 33 at 1. Captain Walsh clarified that he "does not wish to modify his complaint"; rather, he seeks to "report this latest crime to this court, so this court knows what [he] suffers under as he gains back the VA compensation wrongly withheld from his family he raises as a single dad and the defendants [sic] brutal abuse of the FBI in suit." *Id.* ¶ 7 (bold omitted).

The Federal Defendants opposed Captain Walsh's motion to supplement, Docket 52, and filed this motion to dismiss to complaint, Docket 42, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction; Rule 12(b)(2) for lack of personal jurisdiction; and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Gamez filed a separate motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Docket 50. Captain Walsh filed separate responses objecting to the motions to dismiss and to the resistance to his motion to supplement his complaint.[2] Dockets 53, 54, and 57. This Court held a hearing on September 19, 2024, on the Federal Defendants' and Gamez's motions to dismiss. Docket 100.

---

[2] In May 2024, Captain Walsh filed separate motions for partial summary judgment against Winston, Docket 61, Gamez, Docket 66, and Ramsdell, Docket 68, alleging that these defendants are in default for failing to defend themselves. Since May 2024, Captain Walsh has filed multiple ex parte motions for a temporary protection order, alleging that new crimes have occurred against him. Dockets 69, 96, and 104.

## DISCUSSION

Before addressing the merits of the motions to dismiss, the Court dispenses first with Captain Walsh's argument that Gamez, Winston, and Ramsdell are in default for failing to "plead to the complaint." Docket 57 ¶ 2(g); Docket 53 ¶ 5 n.2. Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend*, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55 (emphasis added). "The words 'otherwise defend' refer to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits." *Sturgis Area Chamber of Commerce v. Little Sturgis Rally & Races for Charity, Inc.*, CIV. 08-5024-KES, 2009 WL 10722464, at *1 (D.S.D. May 19, 2009) (quoting *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949)). Therefore, by filing the present motions to dismiss, Gamez, Winston, and Ramsdell have otherwise defended and are not in default.

## I.    Motion to dismiss under Rule 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction." *Healy v. Miller*, 4:24-CV-04053-RAL, 2024 WL 3823097, at *2 (D.S.D. Aug. 14, 2024). While a challenge can be either facial or factual in nature, "[t]he burden of proving subject matter jurisdiction falls on the plaintiff." *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Neb. Pub. Power*

*Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). When, as here, the challenge is factual in nature, a court is not restricted to reviewing the face of the pleadings, and "the court need not view the evidence in the light most favorable to the non-moving party." *Healy*, 2024 WL 3823097, at *2. Rather, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Therefore, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* "A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(1)." *Gesinger v. Burwell*, 210 F. Supp. 3d 1177, 1186 (D.S.D. 2016).

Relying on *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994), the Federal Defendants argue that this Court has authority under Rule 12(b)(1) to dismiss Captain Walsh's complaint in its entirety as to them because the "allegations are fictitious and without factual foundation" such that the complaint fails to present a federal question suitable for a decision by this Court. Docket 43 at 14. Gamez joins the Federal Defendant's argument and "reiterates" the Federal Defendants' position and further contends that Captain Walsh's claims "are illusory, conspiratorial, and wholly lacking a factual basis." Docket 51 at 3.

10

In *Best*, the court held that dismissal under Rule 12(b)(1) is appropriate when a plaintiff's "complaint is 'patently insubstantial,' presenting no federal question suitable for decision." 39 F.3d at 330 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989)). The court explained that to be patently insubstantial, "claims [must] be flimsier than 'doubtful or questionable'—they must be 'essentially fictitious.'" *Id.* (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)). Stated another way, the plaintiff's claims must be "so attenuated and unsubstantial as to be absolutely devoid of merit[.]" *Id.* at 331 (quoting *Hagans*, 415 U.S. at 536). However, courts should not use this standard to "cull *legally* deficient complaints"; rather, the standard "is, as a general matter, reserved for complaints resting on truly fanciful *factual* allegations." *Id.* at 331 n.5.

In this circuit, district courts have likewise dismissed claims pursuant to Rule 12(b)(1) when the "fantastical and delusional" allegations fail to present a substantial federal question. *See Pope v. NP Dodge*, 8:16CV225, 2016 WL 3976618, at *2 (D. Neb. July 22, 2016) (sua sponte dismissing a complaint for lack of subject matter jurisdiction because the "Plaintiffs' pleadings contain factual allegations that are so implausible as to be fantastic or delusional"); *see also Grell v. Obama*, Misc. No. 15-51 (JRT/BRT), 2015 WL 6445496, at *5 (D. Minn. Oct. 21, 2015) (dismissing for lack of subject matter jurisdiction claims that are "wholly meritless, obviously frivolous, and patently insubstantial" and additionally noting that the plaintiff's allegations are "clearly baseless" and "essentially fictitious"); *Roth v. Walters*, 4:22-cv-4096, 2023 WL 1469037, at *6

(D.S.D. Feb. 1, 2023) (dismissing federal claim because it "rests on an 'indisputably meritless theory'" (quoting *Neitzke*, 490 U.S. at 327)).

Notably, two district courts from the District of Columbia have dismissed prior lawsuits brought by Captain Walsh under Rule 12(b)(1) after determining that his claims were patently insubstantial. *See Walsh v. Hagee* (*Walsh 2012*), 900 F. Supp. 2d 51, 58–59 (D.D.C. 2012), *aff'd*, No. 12-5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013); *Walsh v. Comey* (*Walsh 2015*), 118 F. Supp. 3d 22 (D.D.C. 2015). In *Walsh 2012*, the court characterized Captain Walsh's allegations as a "bizarre conspiracy theory" that "spans a number of states and over 20 years, involves an 'ultra secret' government agency, surveillance through a clandestine, international system of unknown capabilities and questionable existence, harassment, and numerous murder attempts." *Id.* at 58–59. And in *Walsh 2015*, the court described Captain Walsh's allegations as "a decades-long, government-wide conspiracy targeting [Captain Walsh] and perpetrated by numerous high-level government officials." 118 F. Supp. 3d at 26 (noting that allegations include interceptions of his mail, attempted assassinations, surveillance, and breaking into his home).

While the specific factual allegations and named defendants in *Walsh 2012* and *Walsh 2015* differ in some respects, Captain Walsh's story line in those two cases is remarkably similar to what he alleges in the current lawsuit against the Federal Defendants and Gamez. As the story goes, Captain Walsh was poisoned by arsenic, the poisoning caused him to become diabetic, government officials repeatedly attempt to interfere with his efforts to be

compensated and to make certain agency or court filings, and government officials illegally surveil him and attempt to murder him. *See Walsh 2012*, 900 F. Supp. 2d at 54–55; *Walsh 2015*, 118 F. Supp. 3d at 26. And in *Walsh 2012*, similar to his current suit, Captain Walsh named an innocent neighbor as a defendant (albeit a Pennsylvania neighbor in *Walsh 2012*) for allegedly acting at the direction of Hagee in illegally conducting surveillance. 900 F. Supp. 2d at 54.

It is also worth noting the district court's observation in *Walsh 2015* that Captain Walsh's lawsuit in that case was "merely the latest installment in a series" of many frivolous lawsuits alleging similar conduct. 118 F. Supp. 3d at 27–28. The court then cited the "prior incarnations" unsuccessfully brought by Captain Walsh. *Id. See Walsh v. United States,*[3] No. 1:05-CV-0818, 2008 WL 2412968 (M.D. Pa. June 10, 2008), *aff'd*, 328 Fed. App'x 806 (3d Cir. 2009);

---

[3] This 2008 case is part of what appears to be Captain Walsh's first lawsuit alleging the government-wide conspiracy. He filed the complaint in 2005 against the United States, the Department of the Navy, and current and retired government officials including Hagee and Humble. *See Walsh v. United States*, No. 1:05-CV-0818, 2006 WL 1617273, at *2 (M.D. Pa. June 9, 2006). Captain Walsh alleged, among other claims, that Humble "slipped arsenic into a drink sitting on Walsh's desk"; that he immediately became sick; that he did not learn until 2003 that he had an arsenic-related disease; and that the defendants failed to investigate the matter. *Id.* He asserted claims pursuant to the FTCA, the Fourth and Fifth Amendments, § 1983, the Privacy Act, and multiple criminal statutes. *Id.* The district court granted the defendants' motion to dismiss, except as to claims brought under the Fourth and Fifth Amendments related to an alleged burglary of his residence by General James Jones. *Id.* at *6. These remaining claims were dismissed on summary judgment, *Walsh*, 2008 WL 2412968, at *1, and Captain Walsh appealed. The Third Circuit affirmed the district court's decision in all respects, 328 Fed. App'x at 810, and the Supreme Court denied certiorari, 558 U.S. 996 (2009).

*Walsh v. United States,*[4] 571 Fed. App'x 109 (3d Cir. 2014) (mem.); *Walsh v. United States,*[5] No. 1:05-CV-0818, 2015 WL 1299584 (M.D. Pa. Mar. 23, 2015); *Walsh v. George,*[6] No. 1:14-CV-1503, 2015 WL 404125 (M.D. Pa. Jan. 29, 2015), *aff'd* 650 Fed. App'x 130 (3d Cir. 2016); *Walsh v. Hagee,*[7] 900 F. Supp. 2d 51 (D.D.C. 2012), *aff'd,* No. 12-5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013); *Walsh v. Hagee,*[8] 10 F. Supp. 3d 15 (D.D.C. 2013), *aff'd,* No. 14-5058,

---

[4] This 2014 case concerned Captain Walsh's appeal of a district court's denial of his motion to reopen the 2005 case based on newly discovered evidence and fraud on the court. 571 Fed. App'x at 110. The district court dismissed his motion as untimely and without merit. *Id.* The Third Circuit affirmed. *Id.* at 111.

[5] In this case, Captain Walsh filed another motion to reopen the above 2005 suit. 2015 WL 1299584, at *1. He asserted that Jones committed his "latest crime on [May 17, 2014] against . . . Walsh and his family" when he "abus[ed] his illegal access to the FBI . . . [by] using . . . real-time surveillance to . . . strike . . . in the parking lot . . . at Walsh and his sons." *Id.* (alterations and omissions in original). The district court denied the motion as untimely and alternatively as lacking substantive merit. *Id.* at *2.

[6] In this 2014 suit, Captain Walsh alleged "Jones has been harassing and 'striking at' him for more than twenty years" and that he more recently interfered with Captain Walsh's 2010 application to correct his military record. 2015 WL 404125, at *1. One particular claim alleged the same type of conduct that is asserted in the current suit, namely that a government official, using the FBI and illegal surveillance, "stalked and struck" at Captain Walsh and his family twice in one day, but Captain Walsh "dodged both" and left. *Id.* at *2. The district court granted the defendants' motion to dismiss pursuant to Rule 12(b)(6). *Id.* at *8.

[7] This is the *Walsh 2012* decision.

[8] In this case, Captain Walsh moved for reconsideration of *Walsh 2012* under Rule 60(b). 10 F. Supp. 3d at 17. He claimed "there is new evidence because his 'allegation is now confirmed by the exposure of defendant Clapper's criminal actions by Edward Snowden, who let the world know Clapper (and Hagee) have the ability to look into judges computers[.]" *Id.* at 18. He also alleged "that there is 'new evidence of the determined criminal actions of Hagee and Clapper' because, after the October 26, 2012 memorandum order and opinion, the defendants broke into Walsh's residence and car and 'look[ed] into this Court's computer.'" *Id.* He alleged fraud on the court based on "the government's confirmation that the FBI has not issued any warrants to put Walsh under surveillance"; that "Hagee and Clapper have been conducting illegal surveillance on Walsh for years"; and that Hagee "intercepted the complaint from defendant Clapper and delivered it to the Navy[.]" *Id.* at 19. Similar to here, Captain Walsh claimed "that the defendants 'falsified a medical evaluation to withhold Walsh's

2014 WL 4627791 (D.C. Cir. July 11, 2014); *Walsh v. Jones,*[9] No. 13-CV-928 (RCL), 2014 WL 8763339 (D.D.C. June 3, 2014), *aff'd,* No. 14-5221, 2015 WL 1606937 (D.C. Cir. Mar. 13, 2015).

Here, a review of the allegations in Captain Walsh's complaint against the Federal Defendants and Gamez reveals that he has failed to present a federal question suitable for a decision by this Court. First, while he accurately cites to and quotes federal statutes and the United States Constitution, that alone does not invoke this Court's jurisdiction to hear and determine his claims. Indeed, "[a] court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005). Second and more importantly, his claims against the Federal Defendants and Gamez— which allege repeated attempts on his life by current and retired government officials, invasion of his privacy rights, interference with his VA benefits and related proceedings, unlawful surveillance, and property damage—are obviously frivolous. This determination is supported in large part on the same observation the district court made in *Walsh 2015*—that Captain Walsh's

---

VA compensation[.]'" *Id.* The district court denied Captain Walsh's motion to reconsider in its entirety. *Id.* at 21.

[9] This is a summary dismissal; however, according to the district court in *Walsh 2015*, Captain Walsh alleged "that James Jones and the Secret Service unlawfully broke into his house, smashed his furniture, and chopped his prescription medication." 118 F. Supp. 3d at 27. The district court dismissed the suit because "there is no factual basis whatsoever" for the suit and it is "simply another frivolous claim based on a bizarre government conspiracy theory[.]" *Id.*

current suit is effectively the latest installment in a series of his prior frivolous lawsuits alleging similar bizarre conspiracy theories. *See* 118 F. Supp. 3d at 27–28.

As the Supreme Court explained, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit; wholly insubstantial; obviously frivolous; plainly insubstantial; or no longer open for discussion[.]" *Hagans*, 415 U.S. at 536 (citations and internal quotation marks omitted); *see also Biscanin*, 407 F.3d at 907 (providing that "[i]f the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate"). Further, although pro se complainants are held to a less stringent pleading standard, dismissal under Rule 12(b)(1) will not be avoided when the plaintiff's allegations are "fundamentally incredible[,]" failing to present a federal question suitable for a decision. *See Roum v. Bush*, 461 F. Supp. 2d 40, 47 (D.D.C. 2006) (dismissing pro se claims in part under Rule 12(b)(1) because they are "inherently unrealistic allegations").

Because Captain Walsh's complaint against the Federal Defendants and Gamez fails to present a federal question for this Court's review, dismissal under Rules 12(b)(1) and 12(h)(3) is warranted. However, for good measure, the Court will address whether any claims in Captain Walsh's complaint should be dismissed under Rules 12(b)(2) and 12(b)(6).

16

## II.    Motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction as to Del Toro, Hagee, Humble, and Nordwall

"To survive a motion to dismiss for lack of personal jurisdiction" under Rule 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). This "is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (citation omitted). To determine whether the plaintiff has made the requisite showing, the evidence must be viewed in the light most favorable to the plaintiff. *Digi-Tel Holdings*, 89 F.3d at 522 (citation omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "The South Dakota Supreme Court has interpreted the long-arm statute to confer jurisdiction 'to the fullest extent permissible under the due process clause of the Fourteenth Amendment.'" *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987) (quoting *Ventling v. Kraft*, 161 N.W.2d 29, 30 (S.D. 1968)). Therefore, to determine whether personal jurisdiction exists, the Court examines whether the exercise of jurisdiction comports with the limits imposed by federal due process. *Estate of Moore v. Carroll*, 159 F. Supp. 3d 1002, 1007 (D.S.D. 2016) (citation omitted).

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *World-Wide Volkswagen v. Woodson*, 44 U.S. 286, 291–92 (1980); *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945) (additional citations omitted)). "A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Id.* at 820–21 (citations omitted). "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)). The Eighth Circuit established the following five-factor inquiry when testing the sufficiency of a non-resident defendant's contacts with the forum state: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Id.* at 821 (citation omitted).

Defendants Del Toro, Hagee, Humble, and Nordwall assert that they lack the minimum contacts necessary to accord this Court with personal jurisdiction over them in their individual capacities. Docket 43 at 10. Each assert that they have never resided or owned property in South Dakota. *Id.* They also claim to have never worked here. *Id.* In their view, "[w]ithout such

connection to the forum state, it would be highly inconvenient and unfair for these defendants to be called into South Dakota to defend this litigation." *Id.*

In response, Captain Walsh contends that personal jurisdiction exists because these defendants were served with the complaint and did not challenge the service of process. Docket 57 ¶ 4(g), (i); ¶ 10; ¶ 13. As to Del Toro, Captain Walsh more specifically alleges that because Del Toro "can reach into South Dakota," he "remains liable for his lack of action (or lack thereof) and can be haled into this courthouse." *Id.* ¶ 4(i). For Hagee, Captain Walsh claims personal jurisdiction exists because his "tortious conduct" "extend[s] to the medical condition [Captain Walsh] suffers here in South Dakota" and "**ALL** of murderer Hagee's most recent crimes, ordered murders and fraud upon the government have taken place" in South Dakota. *Id.* ¶ 4(i), (j). He also asserts that South Dakota's long-arm statute gives this Court personal jurisdiction over Hagee because of his multiple crimes and over Nordwall because of his "abuse of the FBI and sending FBI agents against Walsh at his residence time and again[.]" *Id.* ¶ 10.

Captain Walsh's arguments in support of personal jurisdiction are unavailing. Del Toro, Hagee, Humble, and Nordwall were not required to object to service of process in order to challenge this Court's personal jurisdiction over them; service of process and valid personal jurisdiction implicate two different inquiries. *See Edwards v. Edwards*, 4:23-CV-4106-LLP, 2023 WL 7305026, at *4 (D.S.D. Nov. 6, 2023) (noting that service of process is the means by which a defendant is given notice that the federal court asserts personal jurisdiction

over him). More importantly, however, because these defendants raised a meritorious challenge to the Court's personal jurisdiction over them, Captain Walsh now has the burden of proving jurisdiction by affidavit, testimony, or documents. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004) (providing that when personal jurisdiction is challenged, the plaintiff must make a prima facie showing of jurisdiction via affidavits and exhibits). This he has not done. Rather, Captain Walsh relies on the same conclusory allegations stated in his complaint that these defendants caused acts to be committed in South Dakota. But "[w]here the assertions in a plaintiff's complaint are contested," it is not enough to rely on conclusory statements lacking factual foundation. *Id.* at 1074. Therefore, Captain Walsh has not made the requisite prima facie showing, and this Court has no basis to exercise personal jurisdiction over Del Toro, Hagee, Humble, and Nordwall.

## III. Motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etailed factual allegations are unnecessary[.]" *Spearfish Evans-Tonn Ditch Co. v. Horizon Invst., LLC*, 715 F. Supp. 3d 1219, 1225 (D.S.D. 2024). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678). A pro se complaint, while construed liberally, "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

"When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint.'" *Healy v. Fox*, 572 F. Supp. 3d 730, 738 (D.S.D. 2021) (internal quotation marks omitted) (quoting *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013)). "The consideration of judicially noticed facts, such as public court records, does not convert a motion to dismiss into one for summary judgment." *Id.* (quoting *Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401, 406 (D.S.D. 2011)).

### A. Res Judicata (counts one through three)

The Federal Defendants assert that counts one and two and one allegation in count three are barred by the doctrine of res judicata. Docket 43 at 15; Docket 95 at 11. A court may dismiss a claim under Rule 12(b)(6) based on res judicata. *Fox*, 572 F. Supp. 3d at 738 ("Res judicata or running of a statute of limitations may justify granting a motion to dismiss" (citing *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). Res judicata embodies two concepts—issue preclusion and claim preclusion. *Id.* "Claim preclusion 'forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]' while

'[i]ssue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Id.* at 739 (cleaned up) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Captain Walsh alleged in count one that Humble attempted to murder him in 1985 by pouring arsenic in his drink. But this claim was previously litigated to a final judgment on the merits in *Walsh v. United States* (*Walsh 2006*), No. 1:05-CV-0818, 2006 WL 1617273, at *6 (M.D. Pa. June 9, 2006) (dismissing Captain Walsh's suit against Humble in its entirety under Rule 12(b)(6)). The court reasoned that the *Feres* doctrine barred the claims because the alleged poisoning took place on military property while Captain Walsh was on active military duty performing his military job. *Id.* at *3–4, 6. The court also determined that dismissal was appropriate because the "claims accrued almost twenty years ago and hence [were] untimely." *Id.* at *4. Finally, to the extent Captain Walsh alleged that Humble's acts violated certain criminal statutes, the court dismissed those claims because he did not have a private right of action to enforce those statutes. *Id.* at *5.

Captain Walsh disagrees that res judicata applies because in his view he "pierced" the application of res judicata because he "did not discover the cause of his incurable disease until it was confirmed by the VA in 2010" and because his "medical condition has worsened[.]" Docket 57 ¶ 4(m) (bold omitted). On the contrary, Captain Walsh had notice of the cause of his disease at the time of the *Walsh 2006* decision. As the district court in that case noted, Captain

Walsh recently learned that "the cause of his ills" was the alleged poisoning. *Walsh 2006*, 2006 WL 1617273, at *4 n.9. Because the count asserts the same claims reviewed and dismissed in *Walsh 2006*, res judicata bars Captain Walsh's attempt to relitigate them.

Res judicata also applies to preclude relitigation of count two and part of count three. In count two, Captain Walsh alleged that Hagee sent federal agents to "strike and kill" him on his evening run on October 11, 2006, Docket 1 ¶ 14, and in count three, he asserted that Hage "orchestrated" the placement of a "fraudulent medical evaluation" record suggesting Captain Walsh underwent such evaluation on December 13, 2006, at a VA medical center in Delaware, *Id.* ¶ 16. Captain Walsh unsuccessfully alleged these same wrongs against Hagee in *Walsh 2012*, 900 F. Supp. 2d at 54. For example, Captain Walsh asserted in his amended complaint in *Walsh 2012* that "[o]n 11 Oct 2006, to keep Plaintiff RMW from making a filing [a different federal case in Pennsylvania], Hagee sent assassins from the 8th CIT (Counter-Intelligence Team) to strike and kill RMW during his evening run[.]" *Id.* (Docket 64 from No. 11-2215 (RWR)). He further alleged "on 13 Dec 06, defendant Hagee had the VA Medical Center (VAMC), in Wilmington, Delaware, falsify a medical examination on Plaintiff RMW." *Id.* (Docket 64 from No. 11-2215 (RWR)).

While the district court in *Walsh 2012* dismissed these claims under Rule 12(b)(1) because they presented nothing more than a "bizarre conspiracy theory[,]" *id.* at 59, Captain Walsh's current claims, which are premised on the same facts and seek the same relief, suffer the same jurisdictional defects

identified in *Walsh 2012* and are thus barred by res judicata. *See Ryan v. Total Fire Protection, Inc.*, No. Civ.03-5495 ADM/AJB, 2004 WL 1151531, at *3 (D. Minn. May 20, 2004); *Oglala Sioux Tribe v. Homestake Min. Co.*, 722 F.2d 1407, 1411 (8th Cir. 1983) (applying res judicata to the present action "asserting identical claims and jurisdictional grounds" as the prior action).

### B. Claims under the FTCA (all counts)

Captain Walsh broadly alleged in his complaint that he brings this lawsuit against all the defendants pursuant to the FTCA. The Federal Defendants contend that "[b]ecause the only proper defendant in an FTCA suit is the United States, the Court should dismiss the Department of the Navy, and the individual defendants from all FTCA claims." Docket 43 at 16. The Federal Defendants further allege that Captain Walsh's FTCA claims against the United States are barred by the intentional tort exception to the FTCA and the *Feres* doctrine and because some claims are untimely. *Id.* Gamez argues that Captain Walsh's FTCA claims against him should be dismissed because, as the Federal Defendants note, the United States is the only proper defendant. Docket 51 at 5.

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). The United States is the only proper defendant in an FTCA action. *Kraft v. Office of the Comptroller of Currency*, 4:20-CV-04111-RAL, 2021 WL 1251393, at *9 (D.S.D. Apr. 5, 2021).

24

Therefore, Captain Walsh's FTCA claims are improper to the extent they are against any defendant other than the United States. *See id.*

Captain Walsh's remaining FTCA claims to the extent they are against the United States likewise fail and must be dismissed. First, multiple counts allege assaultive conduct—an intentional tort—but the FTCA does not waive sovereign immunity for these types of intentional torts. 28 U.S.C. § 2680(h); *Blackwell v. Social Security Admin.*, No. 23-1865 (JRT/JFD), 2024 WL 477038, at *4 (D. Minn. Feb. 7, 2024). Second, where necessary, Captain Walsh has not established that he has exhausted his administrative remedies prior to bringing this suit.[10] "Federal courts only have jurisdiction over FTCA claims that are first presented through an administrative claims process." *See* 28 U.S.C. § 2675; *Blackwell*, 2024 WL 477038, at *4. Third, FTCA claims based on conduct occurring more than two years after the claim accrued are time-barred, and many of Captain Walsh's claims are based acts occurring many years ago.[11] 28

---

[10] In his response to the Federal Defendants' motion to dismiss, Captain Walsh asserts that he did exhaust his administrative remedies and directs this Court to his administrative claim filed with the Department of the Navy at Exhibit A to his complaint. Docket 57 ¶ 4(m); Docket 1-1. But administrative claims must be presented to the federal agency for which the activities give rise to the claim—here, the Department of Justice and FBI—and Captain Walsh has not alleged that he exhausted his administrative remedies in that regard. *See Blackwell*, 2024 WL 477038, at *4.

[11] Captain Walsh alleges that under the continuing violation doctrine "[e]ach new crime by Hagee here in South Dakota . . . restarts the statute of limitations, hence the statute of limitations has not tolled, and Hagee can be haled into this court for each of his crimes since 2006." Docket 57 ¶ 4(n). He directs this Court to *White v. Bloom*, 621 F.2d 276 (8th Cir. 1980). But the continuing violation doctrine does not apply to discrete acts that are independently actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir. 2000) (per curiam) (noting that doctrine does not apply to discrete acts). Moreover, the doctrine is applicable to employment disputes, which Captain Walsh's claims do not

U.S.C. § 2401(b). Fourth, the *Feres* doctrine bars Captain Walsh's claims alleging injuries arising from or during activity incident to military services. *See Feres v. United States*, 340 U.S. 135 (1950) (judicially created exception to the waiver of sovereign immunity under the FTCA).

Finally, Captain Walsh's FTCA claims alleging that certain Federal Defendants failed to act in response to the repeated criminal acts of others (e.g., failure to supervise, police, discipline, etc.) cannot survive dismissal because Captain Walsh failed to allege facts establishing that these defendants' decisions were not grounded in policy considerations. *See Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) (presuming the decision was grounded in policy thereby implicating the discretionary function exception to the FTCA); *see also* 28 U.S.C. § 2680(a) (excluding from the waiver of immunity "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

### C. Claims pursuant to § 1983 (all counts)

Similar to his reliance on the FTCA, Captain Walsh broadly alleged in his complaint that the current suit is brought against the defendants pursuant to § 1983. But § 1983 "simply provides a means through which a claimant may seek a remedy in federal court for a constitutional tort when one is aggrieved by the act of a person acting under color of state law." *Jones v. United States*,

---

include. *See Montin v. Gibson*, No. 4:08CV3082, 2009 WL 5034044, at *2 (D. Neb. Dec. 14, 2009); *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 913 (D. Neb. 2004).

16 F.3d 979, 981 (8th Cir. 1994) (citing 42 U.S.C. § 1983). Therefore, § 1983 is inapplicable here. However, because Captain Walsh is a pro se complainant, this Court will construe his complaint to assert claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of* Narcotics, 403 U.S. 388 (1971)—the federal analog to § 1983.

In *Bivens*, "the Supreme Court recognized an implied right of action for damages arising from constitutional violations committed by officials acting under color of federal law." *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012) (citing *Bivens*, 403 U.S. at 389). But *Bivens* claims cannot be brought directly against the United States or its agencies. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). *Bivens* claims also cannot be brought against private individuals—persons not acting under color of federal law. *Bivens*, 403 U.S. at 397. Therefore, Captain Walsh's complaint, to the extent it asserted a *Bivens* claim against the United States, the Department of the Navy, Gamez, Hagee (for acts occurring after he retired), and Humble (same), must be dismissed.

Captain Walsh's *Bivens* claims against the remaining Federal Defendants also must be dismissed but for different reasons. To begin, the claims against Hagee and Humble for injuries Captain Walsh allegedly sustained while in service are barred by the *Feres* doctrine because the alleged injuries arose out of or in the course of activity incident to service. *See Chappell v. Wallace*, 462 U.S. 296, 303–04 (1983). Next, these claims and others brought more than three years after they accrued are barred by the expiration of the applicable

27

statute of limitations. *See Bourrassa v. United States*, 581 F. Supp. 3d 1188, 1197 (D.S.D. 2022) (*Bivens* actions are governed by the same limitation period applicable to § 1983 claims (three years)). Captain Walsh's claims against Del Toro and Ramsdell for failure to police Hagee and against Nordwall and Winston for failing to respond to the repeated criminal acts of others cannot survive because Captain Walsh did allege that these individual defendants personally violated his constitutional rights. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (noting that defendants are liable for their personal acts). Relatedly, Winston and Nordwall cannot be held liable under *Bivens* for the alleged wrongful acts of the unknown FBI agents because liability cannot be premised on respondeat superior. *See Edwards v. Cox*, 4:20-CV-04130-KES, 2020 WL 7060071, at *4 (D.S.D. Dec. 1, 2020) (citing *Burford v. Runyon*, 160 F.3d 1199, 1203 n.7 (8th Cir. 1998)).

### D. Claims under the Privacy Act (counts two, five through eight, and ten)

"The Privacy Act provides that any disclosure of information covered by the Privacy Act is prohibited unless the individual whose information is disclosed authorizes it by prior written consent or one of the Act's exceptions authorizes the disclosure." *Drapeau v. United States*, No. 04-4091, 2006 WL 517646, at *6 (D.S.D. Mar. 1, 2006) (citing 5 U.S.C. § 552a(b)). However, Privacy Act claims are limited to federal agencies. *Warnock v. City of Canton*, No. 11-4023-KES, 2012 WL 2050734, at *7 (D.S.D. June 7, 2012) (citing *Spurlock v. Ashley Cnty., Ark.*, 281 Fed. App'x 628, 629 (8th Cir. 2008)).

28

Therefore, Captain Walsh's Privacy Act claims, to the extent they are against individual defendants and the United States, must be dismissed. His Privacy Act claims against the Department of Navy likewise must be dismissed because he did not allege facts to support a material element of such a claim—that agency officials obtained information in a system of records maintained by that agency or that agency officials disclosed such information. *See Hoffman v. Rubin*, 193 F.3d 959, 966 (8th Cir. 1999) (dismissing in part because the plaintiff did not present evidence that the information was obtained from the agency record).

### E. Claims under HIPAA, the CVRA, the APA, the 14th Amendment, various criminal statutes, and the Ku Klux Klan Act

There is no private right of action for violations of HIPAA. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citations omitted). Therefore, Captain Walsh cannot maintain this private cause of action against any of the defendants to enforce alleged violations of HIPAA.

Captain Walsh likewise cannot maintain this suit against the Federal Defendants and Gamez under the CVRA. The CVRA provides in part that "[n]othing in this chapter shall be construed to *authorize a cause of action for damages* or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages." 18 U.S.C. § 3771(d)(6) (emphasis added). As the Eleventh Circuit explained in a lengthy opinion on this question, "the CVRA doesn't authorize a crime victim to file a freestanding

29

civil action to assert [his] rights even before the commencement of—and in the absence of—criminal proceedings." *In re Wild*, 994 F.3d 1244, 1259 (11th Cir. 2021). Therefore, contrary to Captain Walsh's argument in opposition, he cannot use this current lawsuit to seek enforcement of his alleged rights under the CVRA.

Captain Walsh referred to the APA in the jurisdictional statement of his complaint, but he does not otherwise challenge any particular final agency action suitable for judicial review. "[T]he APA provides no substantive requirements, but merely provides the framework for judicial review of agency action." *Preferred Risk Mut'l Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996). In that regard, "the plaintiff must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies[.]" *Id.* By failing to do so here, Captain Walsh has not stated a claim upon which relief may be granted under the APA.

Throughout the complaint, Captain Walsh referred to various criminal statutes in support of his argument that the Federal Defendants have engaged in criminal wrongdoing and that he is entitled to recover damages as a result. But Captain Walsh did not establish that any of the criminal statutes for which he cites confer a private right of action. *See Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003) (recognizing the strong presumption that a criminal statute does not confer a private right of action). Moreover, to the extent Captain Walsh sought to compel the prosecution of any of the defendants in federal court, this Court is without the power to direct the filing of criminal charges. *See Cragoe v.*

30

*Maxwell*, No. 11-4188, 2012 WL 462960, at *2 (D.S.D. Feb. 3, 2012) ("If [the pro se plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings." (citation omitted)).

In count ten, Captain Walsh alleged that multiple unknown FBI agents, at the direction of Hagee and in using Gamez's house, violated the Fourteenth Amendment and Ku Klux Klan Act by "attempting to both intimidate and block [him] from making a filing in court." Docket 1 ¶ 54. These claims fail as a matter of law. The Fourteenth Amendment only applies to state actors, not to actions taken by federal officials (FBI agents) or by private action (by Hagee and Gamez). *See Richmond v. Weise*, 4:23-CV-04168-RAL, 2024 WL 1834396, at *3 (D.S.D. Apr. 26, 2024) (recognizing that the Fourteenth Amendment only protects against infringements by state actors); *Florey v. Air Line Pilots Ass'n, Int'l*, 575 F.2d 673, 676 (8th Cir. 1978) ("It is well settled that the prohibitions of the Fifth and Fourteenth Amendments do not apply to private actions."). Further, while the Ku Klux Klan Act provides a cause of action where "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court," 42 U.S.C. § 1985(2), Captain Walsh's complaint includes only scant allegations, none of which give rise to a plausible claim of a conspiracy.

For all the reasons explained above—that the complaint fails to present a federal question suitable for a decision by this Court; that this Court lacks personal jurisdiction over the claims against Del Toro, Hagee, Humble, and

Nordwall; and that the complaint fails to state a claim upon which relief can be granted—Captain Walsh's complaint against the Federal Defendants and Gamez must be dismissed in its entirety.

## IV.    Captain Walsh's motion to supplement his complaint

At Docket 33, Captain Walsh filed what he calls a "supplemental pleading" and in the filing he relays the most recent criminal acts allegedly committed by the FBI defendants at the direction of Winston and Nordwall on April 7, 2024. He requests that the Court allow his supplemental pleading and further that the Court order "the FBI defendants (Winston and Nordwall) to plead to this latest crime, in suit, when they file their responsive pleading due on 2 May 2024." *Id.* ¶ 7. As support for his request, Captain Walsh cites Federal Rules of Civil Procedure 15(d) and 15(a). *Id.* ¶ 4. The Federal Defendants object, arguing that Captain Walsh did not file a proper motion to supplement and, further, that even if he did file a proper motion, it would fail because his claims are frivolous and would not withstand a motion to dismiss. Docket 52 at 4–6.

Rule 15(d) permits *supplements* to pleadings, while Rule 15(a) permits *amendments* to pleadings. Supplemental pleadings are "designed to cover matters subsequently occurring but pertaining to the original cause." *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101 (W.D. Mo. 1939)). By comparison, "[a]n amended pleading is designed to include matters occurring before the filing of

the bill but either overlooked or not known at the time." *Id.* (quoting *Berssenbrugge*, 30 F. Supp. at 101).

Captain Walsh's reliance on Rule 15(a) and Rule 15(d) is misplaced. Captain Walsh's motion does not seek to amend his original complaint to include a matter occurring *prior* to the filing of that complaint; therefore, Rule 15(a) is an improper vehicle to achieve the relief Captain Walsh requests at Docket 33. *See Vorachek*, 563 F.2d at 886. Further, although Captain Walsh's motion concerns conduct that allegedly occurred *after* he filed his original complaint (arguably implicating Rule 15(d)), he states in his motion that he "does not wish to modify his complaint[.]" Docket 33 ¶ 7 (bold omitted). Rather, he wants this Court to be aware of what he "suffers" while "he gains back the VA compensation wrongly withheld from his family he raises as a single dad[,]" *id.*, and be aware of the most recent crime "so this court grasps the continued crimes of the FBI against [him,]" Docket 54 ¶ 6. Because Captain Walsh does not actually request to supplement his original complaint, Rule 15(d) is not implicated. *See Walsh v. Dept. of the Navy*, 4:23-CV-04164-ECS, 2024 WL 4043657, at *7 (D.S.D. Sept. 4, 2024) (denying, in a separate action concerning FOIA, Captain Walsh's Rule 15(d) motion because he related in the motion that he "does not wish to modify his complaint").

However, even if this Court liberally construes Captain Walsh's pro se filing to be a proper motion under Rule 15(d) to supplement his original complaint to include the alleged "most recent crime by the criminal FBI out of the Minneapolis FBI Office . . . on 7 April 2024," Docket 33, his motion would

be denied because the proposed supplemental pleading would be futile. It is clear from his filing at Docket 33 that his new claim would be immediately subject to dismissal on the same grounds as his claims in his original complaint related to the "criminal FBI" acting at the direction of Winston, Nordwall, or Hagee. *See Moody v. Vozel*, 771 F.3d 1093, 1095–96 (8th Cir. 2014) (noting that a pleading is futile when it does not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (citation omitted)).

## V.    The Federal Defendants' and Gamez's motion for a prefiling injunction

The Federal Defendants request that this Court issue an order "enjoining [Captain] Walsh from filing any further lawsuits, pleadings, or other papers in the District Court of South Dakota unless he is represented by a licensed attorney or obtains prior approval from a judicial officer of this District." Docket 95 at 20; *see also* Docket 43 at 40. Gamez joins in the Federal Defendants' request and particularly notes that Captain Walsh is now "targeting and harming a private citizen and neighbor[.]" Docket 51 at 6. Captain Walsh objects, asserting a right of access to the courts and a First Amendment right to petition the court for relief. Dockets 53, 57.

A plaintiff has "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988) (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981)). Frivolous claims "consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith

34

claims." *Id.* Therefore, "[t]he Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *Id.* at 1293 (citation omitted); *see also Noble v. Am. Nat'l Prop. & Cas. Ins. Co.*, 297 F. Supp. 3d 998, 1012 (D.S.D. 2018) (providing that in "the Eighth Circuit, a district court may enjoin a plaintiff who filed frivolous and vexatious lawsuits from filing further actions without first obtaining leave of the district court"). Also, 28 U.S.C. § 1651(a) accords district courts the "authority 'to enjoin litigants with lengthy histories of abuse from future filings or to impose such other restrictions prefiling as may be necessary to thwart such abuse.'" *Noble*, 297 F. Supp. 3d at 1012 (quoting *Lundhal v. NAR, Inc.*, 434 F. Supp. 2d 855, 855–56 (D. Idaho 2006)). However, "[a] filing restriction must be narrowly tailored to fit the circumstances it is intended to address." *Pederson v. Kesner*, No. 21-cv-02256 (ECT/DTS), 2022 WL 4080686, at *3 (D. Minn. Sept. 6, 2022) (citing *In re Pointer*, 345 F. App'x 204, 205 (8th Cir. 2009)).

Here, the Court finds that a narrowly tailored filing restriction is appropriate. Captain Walsh has an extensive litigation history alleging the same core factual allegations at issue in this case, and his prior suits have ultimately been dismissed as frivolous or on other grounds making clear that his government conspiracy claims, current and past, cannot be sustained. His frivolous lawsuits have resulted in "prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims." *See*

*Tyler*, 839 F.2d at 1293 (quoting *People of the State of Colorado v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)). Similarly, Captain Walsh's lawsuits have imposed an unnecessary burden on the courts. *See id.* ("Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims."). Notably, in a prior government conspiracy case brought in a different district, Captain Walsh was specifically warned "that repetitive and vexatious litigation may lead to filing restrictions and sanctions."[12] *Walsh v. George*, 650 Fed. App'x 130, 133 (3d Cir. 2016).

It is apparent from Captain Walsh's litigation history, that he will continue to file new lawsuits alleging unfounded claims based on the same nucleus of operative facts as those alleged in the current frivolous lawsuit. Therefore, this Court intends to impose a narrowly tailored prefiling restriction enjoining Captain Walsh from filing new cases in this District against the Federal Defendants and Gamez regarding the current or similar allegations unless he is represented by counsel or obtains prior approval from a judicial officer of this District. However, before the Court imposes this prefiling injunction, Captain Walsh is afforded 30 days from the date of this order to set forth good cause as to why the prefiling injunction should not issue. *See*

---

[12] The Third Circuit noted that a district court had in 2014 issued a sua sponte order to Captain Walsh to show cause why an injunction limiting future filings should not issue. *George*, 650 Fed. App'x at 133 n.3. In another case, the Court observed that "[a] mere dismissal here, however, will apparently do little to dissuade [Captain Walsh] from" continuing to file lawsuits and issued an order to show cause why an injunction should not issue. *Walsh 2015*, 118 F. Supp. 3d at 28.

*Pointer*, 345 Fed. App'x at 205 (noting that a litigant must be given notice and an opportunity to respond before a court enters a prefiling injunction).

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the Federal Defendants' motion to dismiss, Docket 42, is granted. It is further

ORDERED that Gamez's motion to dismiss, Docket 50, is granted. It is further

ORDERED that Captain Walsh's motion to supplement his complaint, Docket 33, is denied. It is further

ORDERED that the above rulings render moot Captain Walsh's motions at Dockets 61, 66, 67, 68, 69, 96, and 104. It is further

ORDERED that Gamez's oral request for sanctions is denied. It is further

ORDERED that the following prefiling injunction will issue unless Captain Walsh show good cause otherwise in writing within 30 days of this order: Prior to filing a new lawsuit in this District against the Federal Defendants or Gamez regarding matters related to the same nucleus of operative facts as those alleged in the current case, Captain Rory M. Walsh must obtain approval from a judicial officer of this District or be represented by counsel.

DATED January 15, 2025.

BY THE COURT:


/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE